UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Harriet Paige Tucker,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil No. 14-cv-001046 (APM) |
| ) | |
| **Jeh Johnson, in his official capacity as** ) | |
| **Secretary, United States Department of** ) | |
| **Homeland Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

Plaintiff Paige Tucker brought this action under Title VII of the Civil Rights Act of 1964 against her former employer the Federal Emergency Management Agency ("FEMA" or "Defendant"), which is part of the Department of Homeland Security. Defendant terminated Plaintiff's employment in March 2010 for "unacceptable performance." Plaintiff contests Defendant's explanation, alleging that Defendant (1) discriminated against her because of her gender; (2) retaliated against her for reporting the sexually harassing behavior of a colleague; and (3) subjected her to a hostile work environment.

Defendant has moved for summary judgment on all claims.[1] Having reviewed the evidence, the court finds that a reasonable jury could conclude that Defendant (1) discriminated against Plaintiff because of her gender, and (2) retaliated against Plaintiff for reporting her

---

[1] Defendant also moved for Judgment on the Pleadings under Fed. R. Civ. P. 12(c). However, because Defendant has included an evidentiary record with its Motion, it is converted to a motion for summary judgment under Fed. R. Civ. P. 56. Thus, the court treats Defendant's motion solely as one for summary judgment.

colleague's sexually harassing behavior. On the other hand, the court finds that no reasonable jury could conclude that Plaintiff faced a hostile work environment at FEMA. The court therefore grants in part and denies in part Defendant's Motion for Summary Judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a court should grant summary judgment if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A material fact is one that is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, [ ] on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and identifying those portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

Once the moving party has made an adequate showing that a fact cannot be disputed, the burden shifts to the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation and internal quotation marks omitted) (footnote omitted). The nonmoving party may oppose the motion using "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which [the Court has] referred." *Celotex Corp.*, 477 U.S. at 324. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255

(citation omitted).  However, "[t]o defeat a motion for summary judgment, the non-moving party must offer more than mere unsupported allegations or denials."  *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 17 (D.D.C. 2011) (citing *Celotex*, 477 U.S. at 324).  In other words, if the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.  Summary judgment, then, is appropriate when the nonmoving party fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  *Id.* at 252.

### III. DISCUSSION

In a nutshell, taking the evidence in the light most favorable to Plaintiff, the factual predicate for Plaintiff's claims is as follows.  In the spring of 2009, Plaintiff was a probationary employee within FEMA's Disaster Reserve Workforce Division.  During the summer and early fall of 2009, one of her co-workers, David Thompson, repeatedly engaged in acts of sexual harassment directed at her and other women in the office.  Plaintiff first took her concerns about Thompson's improper behavior to her supervisor, Richard Rosene, who failed to take any corrective action.  As Thompson's harassing behavior continued, Plaintiff took her complaints about Thompson to FEMA's security office in September 2009.  Thereafter, Rosene became overtly and increasingly hostile towards Plaintiff.  Most significantly, in November 2009, Rosene gave Plaintiff a negative performance review, only weeks after she had received a commendation for her work.  Plaintiff received a second negative review from Rosene in January 2010, and Defendant terminated Plaintiff approximately two months later.

Having summarily set forth the factual background, the court turns to Plaintiff's claims and the specific evidence offered by the parties concerning those claims.

### A. Hostile Work Environment Claim

The court begins with Plaintiff's hostile work environment claim. To make out such a claim, Plaintiff must show that she was subjected "to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citation and internal quotation marks omitted). In deciding whether the evidence meets that standard, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances). "In order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998); *see also Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015) ("[T]he standard for severity and pervasiveness is . . . an objective one.") (citing *Harris*, 510 U.S. at 21).

Plaintiff contends that the actions and comments of her colleague, David Thompson, created a hostile work environment. Compl., ECF No. 1, ¶¶ 51-60. Specifically, Plaintiff testified that, beginning in approximately June 2009, Thompson engaged in numerous incidents of inappropriate behavior, including making comments to Plaintiff about her clothes, perfume, and remarking that Plaintiff's necklace "would hit right along [her] breast line." Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. 18 [hereinafter Pl.'s Opp'n], Ex. 4, Dep. of Paige Tucker on March 28, 2012, ECF No. 18-5 [hereinafter Tucker Dep. I.], at 23-25. According to Plaintiff, Thompson also made comments about the physical characteristics of other colleagues, directing them

"[m]ostly toward female staff." *Id*. at 24. Plaintiff heard through another colleague of an incident in early September 2009, during which Thompson, while with other FEMA employees waiting to get their blood pressure checked, "was saying things of a very sexual nature to everyone" and "really upsetting everybody on site." Def.'s Mot. for Summ. J., ECF No. 17 [hereinafter Def.'s Mot.], Ex. C, Dep. of Paige Tucker, April 24, 2015, ECF No. 17-3 [hereinafter Tucker Dep. II], at 62. During that the same incident, Thompson supposedly grabbed the arm of the female nurse taking his blood pressure and held it without her consent. Pl.'s Opp'n, Ex. 2, Dep. of Richard Rosene, ECF No. 18-3 [hereinafter Rosene Dep.], at 44-46. Plaintiff also testified that Thompson would at times follow her around and "suddenly appear" where she was, Tucker Dep. I at 29, and that, at least three times, he removed "his shoes and [snuck] up behind me and then [hung] over top of me, looking down my shirt… and scare[d] me to death sometimes because I wouldn't hear him coming," *id*. at 42.

Thompson's behavior, as described by Plaintiff, was unquestionably inappropriate workplace conduct. But inappropriate conduct, without more, is insufficient to establish a hostile work environment claim. Indeed, Thompson's behavior, while unseemly, fell short of the kind of "severe or pervasive" harassing conduct Plaintiff is required to show in support of her claim. *Harris*, 510 U.S. at 21-23. "In our circuit, even multiple instances of physical contact and sexual advances may not be sufficient to meet the demanding legal standard for a hostile work environment." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 77 n. 20 (D.D.C. 2013) (citing cases).

*Bergbauer* is illustrative. There, the plaintiff's hostile work environment claim centered on, among other things, allegations of colleagues propositioning her for sex; invitations to get drunk so she and a colleague could "have a good time"; crass jokes about oral sex; and unwanted physical contact during a work event where alcohol was consumed. *See id*. at 64-65. Still, the

5

court denied the plaintiff's claim of a hostile work environment, finding that her allegations "amount[ed] to unspecified compliments about her looks, comments that could be seen as romantically or sexually suggestive, and a crass, sexually explicit joke … along with a more serious … isolated incident, outside of the workplace, that was never repeated." *Id*. at 78. The acts of harassment to which Plaintiff was subjected here are unquestionably less severe than those in *Bergbauer*, as well as other cases from this District awarding summary judgment in favor of the employer. *See id.* at 78 n. 20.[2] Therefore, they do not rise to the level of severity and pervasiveness that courts in this District require to establish a claim of hostile work environment. *See id.* at 78 n.18.[3]

Additionally, Plaintiff has failed to establish that Thompson's conduct affected a "term, condition, or privilege" of her employment. *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1122 (D.C. Cir. 2002) (citation omitted); *see also Baloch*, 550 F.3d at 1201 (stating that the harassing conduct must "alter the conditions of the plaintiff's employment and create an abusive working environment"). Plaintiff attested that Thompson's behavior "left [her] feeling generally uncomfortable and uneasy." *See* Def.'s Mot., Ex. B, Tucker Witness Aff., ECF No. 17-2 [hereinafter Tucker Aff.], at 2; *see also* Tucker Dep. I at 41 ("I was very uncomfortable around

---

[2] *Citing Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97–99 (D.D.C. 2007) (holding that acts of sexual harassment by supervisor, including his touching the plaintiff's buttocks and thigh, trying to kiss her, calling her beautiful, and asking her to accompany him on weekend trip, "although by no means ideal workplace conduct, [were] not 'sufficiently severe or pervasive to alter the conditions of [Akonji's] employment and create an abusive working environment.'" (quoting *Harris*, 510 U.S. at 21)); *Carter v. Greenspan*, 304 F. Supp. 2d 13, 25 (D.D.C. 2004) ("Assuming that plaintiff's allegations that [co-worker] 'caressed [him] on his knee,' 'placed her breast on [his] arm,' and 'placed her fingers on [his] buttocks' are true . . . these three isolated incidents are not sufficiently severe in quantity or quality to unreasonably interfere with plaintiff's work performance or create a hostile work environment.").
[3] *Citing Simms v. Ctr. for Corr. Health & Policy Studies*, 794 F. Supp. 2d 173, 193 (D.D.C.2011) (denying employer summary judgment where co-worker asked out the plaintiff every time he saw her; harassed her daily for two years by commenting on her appearance, asking to see her body, staring at her, and undressing her with his eyes; and physically accosted her at work); *Johnson v. Shinseki*, 811 F. Supp. 2d 336, 346 (D.D.C.2011) (holding that jury could find hostile work environment where co-worker made inappropriate comments, his behavior intensified over time, and co-worker "began a course of physical intimidation and contact with [the plaintiff] that included attempts to kiss her, uninvited visits to her office, solicitations for sex, grabbing and pinching of her breast, and grabbing and spanking of her behind").

Mr. Thompson…"). General feelings of workplace discomfort or unease—even those resulting from inappropriate workplace conduct of a sexual nature—are simply not enough to support a claim for hostile work environment. Accordingly, the court grants Defendant's motion for summary judgment on Plaintiff's hostile work environment claim.[4]

### B. Gender Discrimination Claim

Next, the court considers Plaintiff's gender discrimination claim. Compl. ¶¶ 41-47. Under Title VII, an employer may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Nor may an employer "limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(a)(2).

When an employer has offered a legitimate, non-discriminatory reason for the adverse employment action, the court must determine whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race" or some other prohibited ground. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (citations omitted); *see also Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016) ("The 'one central inquiry' that remains is whether a reasonable jury could infer retaliation or discrimination from the evidence.") (citation omitted). Here, Defendant contends

---

[4] Defendant also contends that Plaintiff's hostile work environment claim must be dismissed because she did not timely exhaust her administrative remedies. *See* Def.'s Mot. at 24-27. Because the court grants summary judgment in favor of Defendant on that claim, it need not reach that alternative argument.

that it terminated Plaintiff's employment because she performed poorly in a number of critical areas. Pl.'s Opp'n, Ex. 1, Affidavit of Richard Rosene, ECF No. 18-2, at 5. Accordingly, the court turns to the central question: Whether Plaintiff has produced sufficient evidence for a reasonable jury to find that the employer's asserted reason for terminating Plaintiff was not the actual reason and that Defendant in fact discriminated against her based on her gender. *See Brady*, 520 F.3d at 494.

Defendant focuses on Thompson's conduct, and argues that summary judgment is appropriate for Plaintiff's gender discrimination claim because Thompson's inappropriate comments and actions were not related to Plaintiff's gender. Def.'s Mot. at 11-14. On the other hand, Plaintiff contends that summary judgment should be denied because Rosene treated Thompson, a male employee, differently than her when he did not terminate or discipline Thompson despite his "performance issues." Pl.'s Opp'n at 18-19. Neither argument hits the mark. Defendant is wrong that Thompson's comments were gender-neutral, as the evidence suggests that Thompson's comments and actions, while not rising to the level of creating a hostile work environment, were mostly directed at women, including Plaintiff, and were thus related to gender. *See* Tucker Dep. I at 24. And Plaintiff's contention that Thompson had unspecified "performance issues," Pl.'s Opp'n at 18, but was not similarly disciplined, without more, is insufficient to infer gender discrimination. *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) ("A plaintiff must also demonstrate that 'all of the relevant aspects of [his] employment situation were nearly identical to those of the [other]' employee.") (citations omitted).

Nevertheless, the court finds that there are factual disputes, if read in the light most favorable to the Plaintiff, from which a reasonable jury could conclude that Defendant

discriminated against Plaintiff because she is a woman. Plaintiff testified that Rosene told her both in October 2009—right before Plaintiff's first negative performance evaluation—and in March 2010—right before Plaintiff was terminated—that she "need[ed] to get in [her] place" and that she should "learn [her] place." Tucker Dep. I at 82. Rosene also told her that he had a similar conversation with his daughters, telling them that they "have really got to learn [their] place." *Id*. at 82-83. Plaintiff interpreted those comments to mean that Rosene felt that "as a female [she] needed to learn how to fit into a male leadership above me." *Id*. at 83. Rosene, for his part, denies making those or any other similar statements. Rosene Dep. at 90. But, of course, whether Rosene in fact made the comments attributed to him is a factual dispute that cannot be resolved by the court at this stage.

If, in fact, Rosene made the comments that Plaintiff attributes to him in connection with both her negative performance review and her termination, a reasonable jury could very well conclude that Defendant discriminated against her based on her gender. Indeed, Rosene's statements are direct evidence of gender bias and thus the kind of evidence that generally will entitle a plaintiff to a jury trial. *See Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) ("A 'statement that itself shows . . . bias in the employment decision' qualifies as direct evidence.") (citation omitted); *see also Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246–47 (D.C. Cir. 2011) (describing direct evidence as the type of evidence that "would generally entitle a plaintiff to a jury trial"). A reasonable jury could interpret Rosene's statements, as Plaintiff did, to mean that she needed to learn to subordinate herself to male leadership and that, if she did not, there would be employment consequences. Accordingly, Defendant's motion for summary judgment on Plaintiff's claim of gender-based discrimination is denied.

### C. Plaintiff's Retaliation Claim

Finally, the court considers whether the adverse treatment that Plaintiff experienced at work, and her eventual termination, constituted unlawful retaliation because of her protected activity. Title VII prohibits employers from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To show unlawful retaliation under Title VII, "a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action "because" the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). As here, once an employer comes forward with a legitimate, non-retaliatory reason for the challenged employment action, the court must decide whether or not the employee has proven intentional discrimination or retaliation. *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016) (citations omitted). A plaintiff can survive summary judgment "by providing enough evidence for a reasonable jury to find that the employer's proffered explanation was a pretext for retaliation or discrimination." *Id*. (citing *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012)).

In determining whether Plaintiff has overcome summary judgment, the court must first settle a dispute over when she began engaging in protected activity under Title VII. Defendant argues that Plaintiff did not engage in protected activity until she contacted FEMA's Equal Employment Opportunity ("EEO") office in January 2010, about two months after she received her first negative performance evaluation on November 5, 2009. *See* Def.'s Mot. at 18. As a result, Defendant contends, Plaintiff's negative performance review in November 2009—which

was a precursor to her termination in March 2010—could not have been retaliation for protected activity because no such activity had yet taken place. *Id*. As a result, Defendant argues, the alleged retaliation could not be the "but for" cause of her termination because Rosene had documented Plaintiff's performance-related issues as far back as July 15, 2009, long before she first contacted FEMA's EEO office. *Id.*

Defendant's view of what constitutes "protected activity" for purposes of Title VII, however, is simply too narrow. While it is true that not every complaint garners its maker protection under Title VII, a complaint is protected conduct if it "in some way allege[s] unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). An informal complaint to management may constitute protected activity so long as the plaintiff "clearly complain[ed] about discriminatory treatment." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 202 (D.C. Cir. 2012).

Applying these principles, a reasonable jury could conclude that Plaintiff first began engaging in protected activity as early as the summer of 2009, *before* she claims to have been the target of retaliation. Plaintiff testified that she complained to Rosene about Thompson's "sexual harassment" soon after Thompson's conduct began in the summer of 2009. Tucker Dep. 1 at 26, 102. Plaintiff also attested that she complained to FEMA security about Thompson's "sexually harassing conduct" conduct in September 2009 and that Rosene knew about those complaints. *See* Tucker Aff. at 2; Pl.'s Opp'n, Ex. 5, FEMA Security Report, ECF No. 18-6 [hereinafter FEMA Security Report]; Rosene Dep. at 51. The court therefore disagrees with Defendant's contention that Plaintiff did not engage in protected activity until January 2010. Adverse employment actions taken against Plaintiff before that date—including the negative performance review in November 2009 that formed the predicate for her eventual firing—therefore, can constitute potential acts of

retaliation. *See Porter v. Shah*, 606 F.3d 809, 818 (D.C. Cir. 2010) (holding that a negative performance assessment placed in the plaintiff's personnel file constituted a material adverse action).

The court now turns to the "central inquiry": Has Plaintiff produced sufficient evidence for a reasonable jury to find that Defendant's asserted non-discriminatory reason was not the actual reason for terminating her employment in March 2010? *See Brady*, 520 F.3d at 494. The court finds that she has done so.

A timeline of events—viewed in the light most favorable to Plaintiff—helps to understand the court's reasoning. Plaintiff's quarterly performance review on July 23, 2009, described her as someone who "provides excellent customer service" and is a "thorough researcher and self-starter" with "exemplary" writing skills. Pl.'s Opp'n, Ex. 1, July 2009 Quarterly Performance Review for Paige Tucker, ECF No. 18-2 [hereinafter Tucker Review], at 10. Plaintiff was graded as being "on target" in all measurable criteria. *Id*. at 11. Following this strong review, the very next month, on or about August 18, 2009, Rosene nominated Plaintiff for a workplace performance award. *See* Pl.'s Opp'n, Pl.'s Stmt. of Facts, ECF No. 18 [hereinafter Pl.'s Stmt.], at 4 ¶ 3. The nomination submission, written by Rosene, stated that Plaintiff "is able to offer crucial insight into solving the challenging questions of policy development." Pl.'s Opp'n, Ex. 3, Award Nomination, ECF No. 18-4 [hereinafter "Performance Award"], at 2. On September 23, 2009, the Acting Director of Plaintiff's FEMA branch, Philip Nowak, notified Plaintiff that she had been selected for the distinction, which came with a $500 award, in recognition of her "outstanding dedication and contributions in pursuing the goals … and the mission of the Agency." Performance Award at 1.

Plaintiff's positive workplace performance reviews soon come to an end. On September 3, 2009, three weeks after Rosene had nominated her for the workplace award, Plaintiff lodged a

complaint with FEMA security about Thompson's improper sexual comments to employees waiting for a blood pressure screening and his behavior towards the nurse. *See* FEMA Security Report. She also generally complained about Thompson's "odd, inappropriate, disruptive, or unprofessional" behavior. *Id.* Plaintiff told Rosene that she had filed the complaint with FEMA's security office. *See* Tucker Dep. I at 39; Rosene Dep. at 51. Almost immediately thereafter, Plaintiff testified, her treatment at work deteriorated, as Rosene became critical of her and hardly spoke to her "after the incident with the nurse." *See* Tucker Dep. II at 59.

On November 5, 2009, only six weeks after receiving a commendation for her work, and only two months after complaining to the security office, Rosene gave Plaintiff her first negative performance evaluation. Def.'s Mot., Def.'s Stmt. of Facts, ECF No. 17 [hereinafter Def.'s Stmt.] ¶ 13. This led Plaintiff to file an informal complaint with her second-level supervisor on November 20, 2009. *See* Def.'s Mot., Ex. 1, Informal Grievance, ECF No. 17-1, at 6-7. Later, she filed a formal complaint with FEMA's EEO office. Def.'s Stmt. ¶ 15. The exact date of her initial, formal EEO contact is the subject of dispute: Plaintiff claims that she first contacted the EEO office in November 2009, *see* Pl.'s Stmt. at 7, ¶ 17; 11, ¶ 5, while Defendant alleges that her initial contact with the EEO office on was on January 8, 2010, *see* Def.'s Stmt. ¶ 15; *see also* Def.'s Mot., Ex. A, EEO Counselor's Report, ECF No. 17-1, at 2.

Regardless of when Plaintiff first contacted the EEO office, she alleges that Rosene's "hostility [towards her] increased" soon afterwards. Tucker Dep. II at 112. As he had done in November 2009, Rosene again gave Plaintiff a negative performance review in January 2010. Def.'s Stmt. ¶ 16. In connection with that review, Rosene allegedly told Plaintiff that she was "going to pay" for contacting the EEO office and her union representative about her complaints. Tucker Dep. I at 88, 94. When Plaintiff asked Rosene if he was threatening her, he responded that

she could "take it as [she] like[d] it" and that she had "learned how to file [and she] can go file again." *Id*. at 95. Approximately two months later, on March 31, 2010, Plaintiff was terminated from her position. Def.'s Stmt. ¶ 19.

As the above timeline demonstrates, Plaintiff has produced evidence—both direct and circumstantial—from which a reasonable jury could conclude that her protected activity was the "but for" cause of her termination. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). Specifically, she has produced some direct evidence of her supervisor's retaliatory intent. *See Wilson*, 753 F.3d at 247. Rosene's statements, made in connection with her negative January 2010 performance review, that Plaintiff was "going to pay" for contacting the EEO office and her union and that she had "learned how to file [and she] can go file again" are the kind of statements from which a jury could directly infer that Rosene targeted Plaintiff because of her protected activity. Such evidence alone is enough to get Plaintiff's retaliation claim past summary judgment. *See Vatel*, 627 F.3d at 1246–47 (describing direct evidence as the type of evidence that "would generally entitle a plaintiff to a jury trial"); *see also Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 578 (D.C. Cir. 2013) (holding that the plaintiff had produced direct evidence of retaliation, and thus enough evidence to get to a jury, when his employer gave him "a choice between dropping his claims with the EEOC and being fired"). Although Rosene denies that he made any of the statements that Plaintiff attributes to him, *see* Rosene Dep. at 89 (Q: Do you recall ever mentioning any derogatory remarks towards Ms. Tucker? A: No."), it is not for the court to resolve that "credibility contest." *Ayissi-Etoh*, 627 F.3d at 578.

Plaintiff has also offered sufficient circumstantial evidence of retaliatory motive to defeat Defendant's Motion for Summary Judgment. Plaintiff received a strong performance review and was nominated for a workplace award just weeks before complaining to FEMA security about the

behavior of one of her colleagues. Soon afterwards, Plaintiff testified, Rosene began treating her worse and, two months later, she received a negative performance review. After she complained about the negative review, Plaintiff stated that her treatment continued to deteriorate, including a second poor performance review, which ultimately led to her firing.

This sequence of events could cause a reasonable jury to question whether Defendant's proffered reason for her termination—her supposed poor performance—was in fact the true reason. A reasonable juror might not find it credible that, only ten weeks after nominating her for an award and only five weeks after receiving the award, Plaintiff's work performance had so deteriorated as to justify her negative performance review in November 2009. That poor review came only two months after Plaintiff complained about Thompson to FEMA security. It also came on the heels of increasingly poor treatment by Rosene. This close temporal proximity between Plaintiff's protected activity and the adverse employment action, when combined with Plaintiff's own testimony about her treatment, including Rosene's statements to her, is sufficient evidence from which a reasonable juror could conclude that retaliation was the true reason for her termination. *See Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011) ("[P]ositive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine.") (citation omitted). Accordingly, the court denies Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim.

## V.   CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part Defendant's Motion for Summary Judgment. Plaintiff's gender discrimination and retaliation claims raise a genuine issue of material fact that cannot be resolved on summary judgment. The court finds no such issue with respect to her hostile work environment claim.

Dated: September 30, 2016

_____
Amit P. Mehta
United States District Judge